Good morning, Your Honors. May it please the Court, Paul Orfanides for Appellants Leslie Dutton and the American Association of Women. This case was brought as a limited public forum case. This is not about denial of access to judicial proceedings or cameras in the courtrooms or anything like that, but a denial of access to a limited public forum. The complaint plainly pled ample facts that if established would show that the court became a public forum, a limited public forum after hours. First of all, we allege there was a longstanding practice of allowing the media in to use the courtrooms to film after hours, a longstanding practice of allowing members of the public in for social, civic meetings, that sort of thing. We also, we allege specifically that Appellant Leslie Dutton participated in these types of meetings. We also allege that there was a commercial application process for, you know, non-media, non-social and civic meeting sorts of groups. There was a different track that they could pursue to have access to the court. What is the difference between a limited public forum and a non-public forum? A non-public forum is a forum that has not been made available. The public has not been allowed access to that forum, although it is publicly owned. A limited public forum is exactly what we have here where there is a, the government has allowed under certain circumstances the public to come in and make use of public spaces. A classic example is the Lamb's Chapel case that we cited in our brief. The school district was making its schools available for members of the public after hours to come in and have meetings, to show films, that sort of thing. That's what a limited public forum is, and that's exactly how we brought this case. Again, this is not seeking access to judicial proceedings. This is not about cameras in the courtroom. This is someone who is making a documentary, going to the court, saying, we'd like whenever your courtroom is empty and available for us, we'd like a half an hour of your time, of the courtroom, of time to come in and interview some witnesses and have them read from a transcript of a very important trial or case that took place in that courtroom. If it was a limited public forum, they could still deny access as long as they're content neutral, have reasonable reasons, right? What's your strongest, and this is what troubles me, counsels, the strongest evidence you've got to show that there was really an awareness sufficiently alleged in the complaint that the decision-maker was aware that your client had made unflattering remarks about the Superior Court? There's actually two requirements that have to be fulfilled when something is a limited public forum. One is that the government can make, they can only deny access under reasonable circumstances. So that's one. And the other is it must be viewpoint neutral. And I'm asking you to focus on the second. Okay. The second, well. Because I don't think the complaint alleges that CNN had, what CNN's viewpoint had been. It alleges that CNN got access and we didn't, basically. The CNN component of it, it actually works on multiple different fronts. It helps to show that this was a limited public forum. It helps to show that the court was aware that there was a public interest in the case involving Mr. Fine. It helps to show that there was, you know, some people were being denied access and others weren't, and yet there's really no reason given for why there was a denial of access. So it actually works across the board, including with respect to the reasonableness. What are the criteria that the court used? Don't go to reasonableness, because I don't think you've answered the question yet on viewpoint, if you would. Your complaint, it says, I think repeatedly, and the opposition to the motion to dismiss keeps saying no reason was given. That's correct. As opposed to saying CNN said nice things about the Superior Court and we said critical things about the Superior Court, for example. We alleged on information and belief that the court was aware of it, and the reasons for that information and belief were the multiple requests that we made concerning. What's the it? The court was aware of what? The court was aware of. The controversy concerning Mr. Fine. The controversy and certainly that Full Disclosure Network was making a documentary about that. Did you tell them what your conclusion was going to be? Did you tell them that you had a script prepared and that it was going to portray the judge in a bad light? Did you tell them that you were going to say on camera from their own courtroom that justice was a farce in Southern California? I believe the allegation was on information and belief that the court was aware that Full Disclosure Network had been very critical of the court's confinement of Mr. Fine, and it had been very critical of this concept of paying judicial benefits, the county paying judicial benefits to the courts to supplement the pay they were getting. On the latter point, the complaint alleges a little more than that. The complaint alleges that the controversy about the Superior Court pay had received a lot of local attention in the L.A. times, and after all, we're talking about the L.A. Superior Court. Right. So I think the complaint ‑‑ I understand you're telling me clearly where the complaint alleges that the Superior Court was aware of the controversy concerning their pay, which doesn't seem much of a stretch to me, and Mr. Fine, certainly. But what's your answer to Judge Bybee's question that the decision maker, whoever it was that decided that they weren't going to be given access to the court, was aware that this proposed documentary was going to be unflattering? I think the complaint alleges general awareness on the part of the court of Ms. Dutton and Full Disclosure Network, and that is based on a number of public records requests. They were trying to get information from the court out of ‑‑ and I don't know if these allegations are in the complaint, but this is the basis for the information, I believe. Trying to get information from the court about the benefits. There had been a number of interactions. I think there were a total of six requests over the course of two years to try to get into the court. There were a number of denials. The court was fairly familiar with Ms. Dutton. The counsel's office had had prior interactions with them. All this goes to the nature of the information and belief that we allege. Okay, but, you know, and even if I were to credit everything that you've said, that's only one half of an equation. You still have to show that compared with somebody else, you got treated wrongly. And that someone else you've only alleged is CNN. So where are the allegations that CNN had a practice of praising the court, and that's why the court made its decision about you? With all due respect, I don't think we need to go there. We don't need to show that. What we need to show is that the court didn't exercise any sort of reasonable standards in deciding to deny Ms. Dutton's request when it decided to grant CNN's request. There's these two prongs. So you think it's enough to show that your client had been public in criticizing the superior court and the superior court had denied your client access, even if there had never been a CNN? Yes. Is that right? Yes. I think that's enough to show. And I think the CNN allegation just adds further strength to it. I mean, it could also be a form of viewpoint discrimination for the court to say, we don't want any more reporting coming in about Mr. Fine. How do you handle Judge Bybee's question? I mean, I'm quite with you on the issues that you alleged at paragraphs 14 and 15 of ER-21 of your complaint, that your group was highly critical of both the length of the incarceration of Mr. Fine and the county-provided benefits, right? But is it necessary that you say, and they knew that we were going to criticize them in our video? I don't believe that that is necessary, because, again, even a decision that you might go in there and have a favorable report of the county-provided benefits and Mr. Fine was very fairly dealt with and the court was absolutely right in putting him in the clink? Well, you don't get this. That's not really something. I don't think the court would have expected that. You don't have a documentary about how well the court treated a bowtie-wearing elderly lawyer that was fighting about participation. The good was never praised. The bad was always criticized. But if your argument is that you don't need to show CNN and that you're essentially saying that the Superior Court discriminated against you and infringed unfairly, impermissibly infringed your client's First Amendment rights because it didn't want to be criticized by anybody, period. Or didn't want any more coverage. Okay. Then doesn't the complaint need to say that? Doesn't it need to say we were planning that this documentary was going to be more the same? I still think that, with all due respect, that the idea that the court has to have reasonable standards, that it has to act reasonably in making its decision whether to grant or deny access, that is a fundamental point that we have plainly alleged. We've plainly alleged facts showing that Full Disclosure Network were willing. They were more than reasonable. Their request was very modest. They're very reputable. They've won an Emmy. They were willing to get the insurance bond. They asked four times. They followed all the processes. There's no reason that they asked five times. They got four no's. The fifth time was a decision. Counsel, the panel has repeatedly asked you about the viewpoint discrimination, and you keep sliding off of that and just want to talk about whether you were treated reasonably. So let's go to your, if you want to argue on that basis, let's take it to your base. I think you're arguing about viewpoint discrimination. But if you don't want to talk about CNN, you don't want to talk about that, let's go to the question of reasonableness and the question of the limited public forum. Let's suppose that at some point that the court had made the courtroom available to the media, and in response to adverse publicity or whatever, the court decided to adopt a policy that it would no longer make its courtrooms available to anyone. Now, is that a problem there? Is there a constitutional problem there? I don't know if there's some sort of constitutional limitation. If you don't know there's a constitutional problem, then how do you know that your client's First Amendment rights have been violated? Because we know that this was a limited purpose public forum. We have made those allegations. There's no facts. What if they changed their mind? Then that's a perfect thing that defendants can raise and discover. I mean, if they want to introduce new facts to show that this public forum, this limited public forum had ceased to become a limited public forum at some point in time, that's a factual defense. That needs to be pled. It needs discovery. We never got the opportunity to get there. We never got the opportunity to develop any record. But what justifies you getting into court in the first place to demand that the Superior Court of California justify the reasons for not allowing camera crews to come in and use their courtrooms as a soundstage? Well, we never made any allegation about a soundstage. That is a gross overstatement raised by the court in this instance. That is not we wanted three people in the courtroom for a half hour with one camera. This is not a soundstage. This is not actors. That's a gross mischaracterization of our fairly modest complaint. But it is a recreation. It's not a documentary of things happening in real time. It is a recreation of something. And so, in effect, if you wanted to do that recreation, you could have gone to somebody else's courtroom that would make it available, or you could have created something that looked like that. You could have gone to a law school, asked to borrow their moot courtroom. That's correct. But none of those have been limited public forum. We wanted to go where the trial had taken place, where the hearings had taken place. That had become a limited public forum. We've alleged that. See, if you're alleging that among all the applicants to use the courtroom that you've been singled out because you're going to report ill about the court, that's viewpoint discrimination. You don't want to make that argument. You've made that pretty clear. I think our facts have raised a specter of viewpoint discrimination. Well, you didn't tell us. I've given you opportunity after opportunity, and I heard questions from Judge Christin and Judge Bea, and you didn't want to answer any questions about CNN, so I assume that you just wanted to talk about reasonableness. So now I'm asking, why can't a court simply close its courtroom to public use after hours? A court may, or any other government, may be able to bring or close the doors to something that happens. And it owes you an explanation if it decides to do that? I think, absolutely, the requirement that. . . What would the case be that requires them to give you an explanation? Lamb's Chapel, the whole line of cases, it says decisions on denial or granting requests. . . But Lamb's Chapel still had a policy of making the schoolhouse available. I would say within the context of making reasonable determinations, if a court or if a public entity is going to decide that it wants to withdraw something from being a limited public forum, that it needs to announce that. Was there ever any allegation that they had changed their mind and they weren't going to allow news crews in anymore? No, none whatsoever in the facts. And I'd like to reserve the rest of my time for. . . If I may, Judge, one question? Of course. Thank you. Did you ever ask for permission to amend your complaint? No, we did not. Thank you. Mr. Orfanides, thank you very much. May it please the Court, I'm Robert Nave on behalf of the appellees, the Superior Court defendants. I had two points that I wanted to make, but I want to make one correction before I make those, so I guess that's a total of three. The first statement that counsel made was this is not about filming in a courtroom, but with respect, that's entirely what this case is about. The request was we want to go into a dark and empty courtroom with a camera, and we want to use it respectfully, I guess, as a small soundstage, but a soundstage nonetheless to film people, as Judge Bybee put it, reenacting prior events. I think what he means is this isn't a situation where, you know, some courts just don't let anybody in. Well. He's not arguing that point. He's arguing this is a limited public forum because your client chose to let some in. I understand that. That's the point. I understand that point, Your Honor, except that the general order of the Superior Court, which we've decided the local rules of the Superior Court, and also, frankly, for that matter, the California rules of court all say no cameras, no recording in courtrooms except, and this is the case. This is not the except because this is not covering an ongoing case. This is reenacting something that happened after the fact. Well, the rule doesn't say except covering an ongoing case. Well, the local rule says no cameras allowed, no recording allowed, and the local rule says unless it's permitted by the rule of court. Right. That's not the distinction that you just made, and it seems to be a fair distinction. I don't. And a news crew that's reporting an ongoing case isn't doing it while the trial is going on. Of course, they'd come in for the 6 o'clock evening news, right, after, of course, it had recessed for the day. So what's the difference? It's a slippery slope, Your Honor, in some respects, and I understand the point. But there is a distinction that the complaint alleges because the complaint says historic reenactment. That's the language of the complaint on the one hand. What's the difference between that and a reporter explaining at 6 o'clock? What's the real difference? Well, there has to be – there's coverage of an ongoing case. It's news. Mr. Fine was still in jail. Well. So it's an ongoing case, and the complaint distinguishes between those two things, between coverage of an ongoing case where the guy is still in jail on the one hand and the desire years later after the guy is out of jail, there's no pending case, there's no appeal, there's no nothing. We want to go back and reenact. Use it as a sound stage. Aren't you making the decision of what is newsworthy for the First Amendment right? I don't think so, Your Honor. What are you saying? If Fine's still in jail, CNN can come in and use the courtroom. But Fine's not in jail, so it's not news anymore. It's a sound stage. We're not going to allow it. Who's making that decision? The court made the decision basically. Well, you, your people are making the decision of what's newsworthy or not. The fact that Fine is out doesn't stop it from being newsworthy if Fine has been abused. Mr. Dreyfuss had a long time in Devil's Island before he got any notice back in Paris. I understand, Your Honor. But there's still, I respectfully submit, is a distinction between covering something that is not newsworthy but current, meaning our ongoing proceedings. You're determining what is current. Isn't that the function of the news-gathering agency under the First Amendment? It is the, well, they have a right to cover what they want to cover. Of course. I totally agree with that. The complaint is what I'm focusing on. And the complaint makes a distinction between these two. That's the only point I'm making. Don't you agree that the complaint alleges that there's viewpoint discrimination because of the plaintiff's viewpoint as to county-provided benefits and viewpoint as to Mr. Fine's improper incarceration, so that it isn't necessary to show discrimination as to CNN, as long as the viewpoint that they have is the reason why you're denying them the forum? The word viewpoint discrimination appears in the complaint. So I agree with your question to that extent. But the question is, what are the facts? It's not enough to say I'm informed and believe. No, no, no. The facts, it is an allegation of a complaint. We have to take the facts as pleaded to be true, so long as they're factual facts and not conclusory facts. There's nothing conclusory about their allegation in paragraphs 14 and 15 of the complaint saying that they had been highly critical of both the lengthy incarceration of Mr. Fine and the county-provided benefits. Your Honor, then look at the application, which doesn't mention Mr. Fine, which doesn't mention county benefits. It doesn't mention anything. The only thing it says is we want to use the courtroom to have a historical reenactment and reading a transcript. No reference to subject matter, certainly no reference to viewpoint if there's no reference to subject matter. What do you mean there's no reference to subject matter, counsel? That's all they say. They want to reenact Mr. Fine's experience. There's no mention of Mr. Fine. There's no mention of Mr. Fine. Okay. There's a mention of the controversy concerning the superior court's pay and that his client didn't fight. I don't think so, Your Honor. Let's check. Thank you. If you look at ER 23, which is the quotation from the letters, we're writing you to ask your assistance. We want to film outside the corridor. We're looking to video record two witnesses of a hearing that took place in 2009. I thought we were talking about the complaint. I am. I'm reading from the complaint. Paragraph 20, ER 23. That's my point. There's no mention of Fine. There's no mention of benefits. There's no mention of anything. They want to film something that happened. Paragraph 14 says, In their programs and video news blogs for the Full Disclosure Network regarding Mr. Fine, Dutton and American and Sosa Boven have been highly critical of both the lengthy incarceration of Mr. Fine and the county-provided benefits. I get it. But with respect, do you see the gulf between, here's what we've been doing. We've been critical on the one hand, and the request on the other, which says nothing. Oh, wait a minute. That says nothing? We need to record an account of what happened in the courtroom of Department 86 on March 4th, 2009. What happened in the courtroom? Mr. Fine was found in contempt and sent away to jail. I'll assume so. Well, then don't say they didn't tell us what they wanted to do in the courtroom. Come on. Paragraph 14. Move to another point. Well, with respect to that, Your Honor, my point was that there is no reference of what the viewpoint will be. The only thing that they're asking is. You've got to read the whole complaint in context, don't you? Yes, you do, Your Honor. All right. So with respect to viewpoint, Your Honor, we respectfully submit that the only thing that you get is they are informed and believe that the court had knowledge of these other proceedings. But it's just information and belief, and there's nothing else about that, Your Honor. Well, is that a proper plea in California? It used to be when I was there. We're in Federal court, Your Honor, and I'm just citing to Iqbal. And the idea is that if all you have. You can't use information and belief in Iqbal? You can use information and belief as long as there are facts to support it. Counsel, if you'd look at paragraph 13. Sure. I realize we're really putting you on the spot. But I'm looking at 13 and 14 of the complaint, and I guess 15 as well. Mm-hmm. And I just want to make sure you have a fair opportunity, truly, to answer the question. So it seems to me that I have to read these paragraphs, these two pages, in context, as Judge Bea has suggested. And they've said here on page halfway down ER 20 that their client, Full Disclosure Network, has aired a number of press releases, email updates that have been critical. And then they do go on in 12 and 13 and 14 to talk about Mr. Fine in particular, that he was incarcerated. He was incarcerated in Department 86. So it seems to me your position has to be that this doesn't give an inference that the next program they're going to produce would be the same as the last. That's as best I can do for you, unless you've got more for me. Sure, Your Honor. That's our point. Am I missing anything else? I don't think you're missing anything else. So wouldn't the inference have to be that they've got this history of being critical, and now they're not going to be? I suppose, except that we've talked about the other reporter, and then we don't know what the other reporter's viewpoint. We're talking about viewpoint discrimination. Right. So what if there's no CNN at all? I mean, I agree. I don't see any place where the complaint tells me what CNN's view of this was. But what if there's no CNN? Isn't it enough that there's this history here of this Network being very critical of the Superior Court, and the Superior Court inference being the Superior Court doesn't want to be criticized anymore? Isn't that viewpoint discrimination? If there were facts to support that, it could be. Okay. Why aren't there facts? There aren't facts because there's nothing in the complaint to indicate what her viewpoint was going to be, and you're really expecting a Superior Court, you know, administrator to intuit what it is the other side's thinking and then make a decision on that. I understand your point about prior coverage, but that assumes that they knew about the prior coverage, and the only thing that is information and belief, they knew about that. Now we've got another application, information and belief. They must have thought about that, too. That's my point, Your Honor, that there's just nothing connecting the prior conduct. We take it as true. And this decision, there's nothing in the record to show that she was expressing a viewpoint. By the way, just so it's clear, there's nothing that the Superior Court did to say, we are going to limit your message, we're not telling you what to say or where to say it. There's none of that. The only thing is this issue of viewpoint. And I understand your point, Judge Bailey. If we reverse and remand with instructions that the plaintiff be allowed to supplement or amend the complaint to allege that it intended to be critical of county-provided benefits and the lengthy incarceration of Mr. Fine, that would be all right then? I mean, that would show intended viewpoint discrimination. All of these cases, when you're dealing with pleadings, could someone add other words to the complaint to get Pai a motion to dismiss? The answer is yes. The question is, do they have facts to support it, and is it true? They certainly have facts to support an allegation that they intend to be critical. The fact that they intend to be critical, on the one hand. And that it's known to the courtroom, the courthouse, your defendants, that they intend to be critical, because now look at the complaint, they've answered it. The fact that they were critical in the past, Your Honor, you have to make an inference that they're going to be in the future, that we knew about it, and then we made a decision on that while we're letting everybody else in. That's your point, Judge Christian. The other issue, just to make sure that we're clear, is I'm not even sure this is a forum. I get that I'm into an area that is just very, very touchy, because there's not a lot of law on it, but just to be clear, when you ask to use a courtroom that's empty, and the only people who are there are the actors and the cameraman, the idea of a forum is that you're communicating a message to somebody. That doesn't exist here. And it's because of that that we sort of have a question in the first instance, and our brief addresses this, about whether or not this is even a forum-type case at all. Counsel, I've misplaced in all my paper here the form. Sorry. Can you tell me where in the excerpt is the form?  Let me search for it real quick, Your Honor. I had it a minute ago. Actually, it's pretty early. Are you looking for the application? I am. Yeah, it's ER 15 and 16. Thanks so much. It's ER 15 and 16, Your Honor. Great. Okay, so the form itself, License for Use of Real Property. Go ahead. Was there ever any allegation that this form was used for any other purpose? Do you have to fill out this form to have a wedding at the courthouse or to do anything? What's this for? Was that litigated below? Nothing. It's a motion to dismiss. This wasn't even in the record. So this is added to the briefs in the motion to dismiss. It's not in the record. I can explain it if you'd like. Well, if it's not in the record, it's not in the record. It's not in the record. It's the title of the form I was looking for, but I've interrupted Judge Bybee. But if I could just address the Court's attention to who wrote the form. This is a judicial counsel form used for all sorts of purposes throughout the state. The only thing I can tell you about this is Judge Bybee, it goes back to the point we've been discussing. Where in here does it say that she has a subject matter, that she's going to express an opinion? If anything, she's hiding it because she's, again, talking about historical and that kind of thing, which is my only point, and it may be a small one. But it seems to me that it still is significant, which is if you're not giving the entity the information, I'm going to do this. By the way, you let Abby Bedreau do it, all those kinds of things, so that then you can have an informed decision by the entity. If you gave them all those facts and said, now, I'd like to have the same access she had, and it was denied, I think that would be a much different case. With respect, that's not this. She's sort of hiding it. She's going to do a documentary with witness accounts, and that's all she's ever said. You agree, counsel, that you can have viewpoint discrimination without having a comparative person who has not been discriminated against? In this, do I agree? It's possible. I don't think that's what this case is alleging. So with respect, Beckett. Your point is that since nobody was going to be there except the crew, it's not really a forum. But what about what they filmed and their intention to present that to the public? Aren't they using the courtroom for greater authenticity or feel or expressive expression of artistry as a method of communication to the public? I assume that that's their purpose, and that's what they say in their brief. I refer you to Judge Posner, who talked about pamphlet racks at a public park and said, you know, there are lots of other places to show pamphlets. But to be very particular, the fact that there's going to be a forum later, some other place, that's where the claim of a forum is. The question isn't what they're doing later. It's what use are they doing with it now. You're saying they're just a sound stage. Yeah. In fairness, yes, and that there's no audience. And if there's no audience, there's no forum. And then with respect to the reasonableness issue, the only other thing that I'd point out is that the test for reasonableness is not some, frankly, second-guessing standard where the plaintiff says, well, I'd like it. I filled out all the information. I was truthful, so I get it. The question is, is the use consistent with the purpose to which the place is put? The rules say no filming in courtrooms other than these limited examples, right? And in this case, I think it's hard to say that we create courtrooms in the state of California to be used, as I put it, as sound stages. And so when you sit back and look at this from a practical matter, what are you saying? Are you saying that if we let this request in, that now we're going to let Francis Ford Coppola or someone else come in? Now it's a longer movie and moving down our slippery slope to the point where now we're opening up courtrooms to filming. Counsel, that's just not the case. I can well appreciate if somebody wanted to take your courtroom for a week. That's not the purpose. It needs to be tried in cases. But this was a half an hour, right, for a documentary. I understand that, but I'm not sure that the length of the use is determinative of whether or not it's appropriate, whether the denial is appropriate, or whether it's a forum. It's still the same use, it seems to me. There were plenty of news reports of a reporter standing in front of a great big seal in the state of California in a courtroom, right? Yes, Your Honor. How is that different from what these folks want to do? The difference is that one is a report on a current case. That's what you're positing. It may be or it may not be. For instance, it could be a news report on what's happened to the jurors in the O.J. Simpson case and have a big seal in the back, right? Then that assumes that that purpose was applied for and approved. I'm not aware of that being the case, Your Honor. Just to be very clear, I'm not aware of any case in Los Angeles where the courtrooms have been used for anything other than contemporaneous reporting of news. News, and I understand your point on news, but I'm with you on that. There's a difference between CNN and these folks because at that time, Fine was still in jail. At the time that CNN did the reporting, Fine was in jail. Before that and years afterwards, I'd like to use your courtroom to film something. What is it? Well, I'm not going to tell you. Viewpoint discrimination. No, they did tell you this. They said we're going to film something about county-provided benefits and Mr. Fine's incarceration, and we're highly critical of both of those, and we have been for a long time. With respect, Your Honor, they do allege that they covered the prior events with the county. They do allege that they were critical. They do not allege and they cannot allege that the application at issue here mentioned any of that. That's my only point on this issue of viewpoint discrimination. That's just not in the record, and it could never be in the record, which frankly is the reason why I suggest to you that this issue of amending is not really going to take you very far, again, assuming that this is even the forum. Thank you, Mr. Nave. Thank you very much. Mr. Orphanidis, you've got time remaining. A couple of quick points, Your Honor. ER 23, paragraph 20, the quote, first paragraph, AAW is now involved in production of a documentary program covering the above case. I didn't reference what was above because I thought it was clear from the rest of the complaint what the above case was. We need to record and account what transpired on March 4th. They knew exactly what this was going to be about. You're reading from the complaint about a letter that was sent on November 15th. Yes. 2011. That's correct. They knew exactly what this was about. This whole notion of the ongoing. I'm sorry. When you said the above case, was there a docket number or something? What was the case that was above? I don't know, but I'm assuming in the drafting, I didn't put that in because it was clear from the context of the rest of the complaint. The context may be clear because you've cited Department 80. In the next sentence, you've cited Department 86 and the date, March 4th, 2009, which would allow anybody who was curious to go back and see precisely what was there, although it may have been more than one case. That's right. Even paragraph 19. The above case in the prior sentence does appear to be utterly without anchor. Well, I think the anchor is the context of the entire complaint. If you look at paragraph 19, in approximately 2010, it talks about the Abbey Boudreaux. It talks about Department 86. It talks about Mr. Fine. I mean, it's all there. It's already in the context of the complaint. But the question really is, was there notice in the letter? Yeah. It's nice that you gave them notice in the complaint as to what you were asking to do, but this is what the paragraph 20 that I'm looking at is the letter that says the above case. All I'm saying is that perhaps it was a drafting error on our part when we put this together because to me we didn't need to repeat what we already said in the prior paragraphs. So I don't know what the letter says, but I think that's just a drafting issue. With respect to the ongoing case versus concluded case, there's no evidence in the record that that's why the court did what it did. We don't know if that's a criteria that it uses in deciding whether or not to let film crews into courts after hours. Again, this is something that needs to come out in discovery, if that's going to be their defense, if they're going to have that kind of policy, if they have that sort of standard that they use when they determine who to let in and who not to let in after hours for filming or for whatever purpose, that needs to come out. That can come out in discovery, but that's not something that's appropriate for them to come up and be arguing counter facts in a motion to dismiss stage. Finally, the form is referenced expressly in the complaint. I believe it's in paragraph 24. This is the form after Ms. Dutton was denied twice. She called up the clerk's office and they said, try the commercial route if you want to get access, use this form. And they actually gave them a copy of the form. So this was the form that they were told to use. If you actually look at that form, the form specifically talks about filming. It talks about feature films. It talks about reality TV shows. It talks about music videos. What's the excerpt, please? ER 16. Thank you. Paragraph 9B, type of production. Nine is the quote, will this event involve filming? It is done. Check yes. A, name of the project. Cost of courage. That might give some indication as to the nature of what the. Counsel, on appeal, did you argue that the district court erred by failing to grant you leave to amend? No, we did not. We believed our complaint was sufficient. Any other questions? I don't think so, Mr. Orfinides. Thank you very much.
judges: Bybee, Bea, Christen